IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JAMES O. BAXTER II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:15-cv-00633 (JCC/IDD) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Pro se Plaintiff James O. Baxter II brought this Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, action to remedy the allegedly negligent and constitutionally deficient medical care he received while in custody at a federal correctional facility. The matter is currently before the Court on the United States'[1] motion to dismiss and motion for summary judgment. For the following reasons, the Court will dismiss Plaintiff's constitutional tort claims. The Court will dismiss Plaintiff's negligence claim without prejudice, with leave to

---

[1] The United States moved to substitute itself as the proper party Defendant in place of U.S. Attorney General Loretta Lynch and U.S. Attorney for the Eastern District of Virginia Dana Boente. (*See* Mot. to Substitute [Dkt. 14].) Plaintiff did not object to that substitution at the June 9, 2016 hearing. Accordingly, the Court will grant the motion to substitute the United States as the proper party defendant. *Cf. Harris v. United States*, No. DKC 11-0916, 2012 WL 1067883, at *1 n.1 (D. Md. Mar. 28, 2012); *Saucedo-Gonzalez v. United States*, No. 7:07-cv-00073, 2007 WL 1034949, at *1 n.1 (W.D. Va. Apr. 3, 2007).

file an amended complaint within fourteen (14) days of entry of the accompanying Order.

## I. Background[2]

Plaintiff James O. Baxter II ("Baxter" or "Plaintiff") was incarcerated at Federal Correctional Complex Petersburg ("FCC Petersburg") from August 2006 through November 2014. During the term of his confinement, Baxter was a chronic care patient who received regular medical treatments for hypertension, genital herpes, and other afflictions. (*See* Pl.'s Ex. D [Dkt. 1-4] at 1.[3]) Around December 2009, Baxter complained to the FCC Petersburg medical staff that he was experiencing pain in his genital region. (Compl. ¶ 10.) When the pain did not subside, Baxter persistently requested to see an urologist. (Compl. ¶ 11.)

During a consultation with an FCC Petersburg mid-level practitioner ("MLP")[4] in March 2010, Baxter expressed concern that he might have Peyronie's Disease. (Compl. ¶ 12.) Peyronie's Disease is associated with a build-up of plaque or calcium deposits in the penile shaft, causing various degrees of

---

[2] The Court liberally construes Baxter's pro se complaint. *See Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013).
[3] Citations to the record refer to the pagination assigned by the Electronic Case Management system.
[4] "A mid-level practitioner is a non-physician health-care provider such as a nurse practitioner or physician's assistant." *Parker v. United States*, 475 F. Supp. 2d. 594, 595 n.3 (E.D. Va. 2007).

curvature in the penis, accompanied by pain and discomfort. (Pl.'s Ex. B [Dkt. 1-2] at 28.)  Without conducting a physical examination, the MLP concluded that Baxter did not have Peyronie's Disease and that an urologist examination was not required.  (Compl. ¶ 12.)

Baxter's complaints of pain and requests for examination by a specialist continued through 2010 and into 2011.  In August 2011, an MLP examined Baxter's genital region and concluded there was no "penile deformities" or other physical indicators of Peyronie's Disease.  (Pl.'s Ex. D [Dkt. 1-4] at 1.)  Nonetheless, the MLP submitted a request for Baxter to see a specialist.  (Pl.'s Ex. D at 1.)  A month later, an urologist named Dr. Bigley examined and diagnosed Baxter as suffering from Peyronie's Disease.  (Compl. ¶ 13; Bigley Report [Dkt. 1-1] at 15.)  The specialist recommended that Baxter begin taking Vitamin E and return for a check-up a month later. (Bigley Report.)

After Dr. Bigley's initial diagnosis, Baxter repeatedly requested attention from a specialist to treat his Peyronie's Disease.  (Compl. ¶¶ 14-18.)  Dr. Bigley, however, was no longer under contract with FCC Petersburg and Medical Director Dr. Laybourn allegedly refused to allow Baxter to receive treatment from an "outside" urologist.  (Compl. ¶ 15.)  Eventually FCC Petersburg obtained a new contract urologist, Dr.

Duck, whom Baxter visited in April 2012—eight months after Dr. Bigley's initial diagnosis.  (Pl.'s Ex. A [Dkt. 1-1] at 3.)  Dr. Duck confirmed the presence of Peyronie's Disease and requested that Baxter contact him if the symptoms worsened.   (*Id.*)

Baxter persistently requested follow-up treatment for two months until FCC Petersburg allowed Baxter to again see Dr. Duck in June 2012.  (Compl. ¶¶ 16-18; Pl.'S Ex. B at 2, 24.)  During that consultation, Dr. Duck requested various radiological imaging of Baxter's genitals.  (Pl.'s Ex. B at 2, 24.)  The Utilization Review Committee ("URC") granted that request about two months later, permitting Baxter to travel to an off-site facility to undergo the radiological imaging.  (Compl. ¶ 19; Pl.'s Ex. B at 2, 5, 24.)  Dr. Duck's review of the imaging in November 2012 revealed that no ultrasound of the penile region was taken as initially requested.  (Compl. ¶¶ 19-20; Pl.'s Ex. A at 43.)  Dr. Duck ordered that imaging, which occurred five months later in April 2013.  (Compl. ¶ 25.)

In the interim, Baxter continued to request treatment for pain, anxiety, and sleeplessness caused by his Peyronie's Disease.  In April 2013, Dr. Duck consulted Baxter and advised that a new treatment involving injections of "Collagenase" would be available in November 2013.  (Compl. ¶ 25.)  Baxter and Dr. Duck discussed the new treatment option again in August 2013.  (Pl.'s Ex. B at 20.)  At that time, Dr.

4

Duck informed Baxter that the Collagenase injections were expensive and posed the risk of "possible penile fracture." (*Id.*) Dr. Duck's report from the August 2013 consultation shows that Baxter was "planning on Collagenase injections to start in Nov." and "also wants to try Vit. E. or Fish Oil." (*Id.*) Baxter then made several requests to Dr. Laybourn and an MLP to begin Collagenase treatment. (Compl. ¶¶ 27-32.) Dr. Laybourn, however, did not submit the URC request for the injections until February 2014, three months after Baxter desired to begin the treatment. (Compl. ¶ 32.) The URC denied the request about a week later after concluding that the Collagenase injections were "considered as elective or not medically necessary at this time." (Compl. ¶ 34; Pl.'s Ex. B at 18.) Baxter alleges that the URC reached this result because Dr. Laybourn misrepresented Dr. Duck's findings. (Compl. ¶ 33.)

Baxter continued to request medical examination and treatment for his Peyronie's Disease from April 2014 onward. (Compl. ¶¶ 36-46.) Baxter received consultations from an MLP and Dr. Laybourn, but was not permitted to see an urologist again. During an examination with an MLP in October 2014, Baxter learned that medication he was prescribed for an unrelated condition had a possible side-effect of contributing to Peyronie's Disease. (Compl. ¶ 48.) By that time, Baxter had

5

been taking the medication for three years without knowing of the potential adverse side-effect. (Compl. ¶ 48.)

Baxter was released from custody in November 2014. (Compl. ¶ 47.) He filed this lawsuit six months later, alleging claims of medical malpractice/negligence, "deliberate indifference," and "equal protection," all pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*

On April 12, 2016, the United States moved to be substituted as the proper party defendant, to dismiss the constitutional tort claims for lack of subject matter jurisdiction, and to grant summary judgment with regards to the claim of medical malpractice.[5] (*See* Mem. in Supp. [Dkt. 16].) Plaintiff responded to the motions on June 1, 2016, after receiving an extension of time. (*See* Mem. in Opp'n [Dkt. 28].) Parties argued the motions before the Court on June 9, 2016. The motions are now ripe for disposition.

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss an action for lack of subject matter jurisdiction. *Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777 (E.D. Va. 2003). In deciding a motion made pursuant to Rule 12(b)(1), the court must ascertain whether "plaintiff's

---

[5]   On the same day, the United States provided the notice required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). [Dkt. 17.]

6

allegations standing alone and taken as true plead jurisdiction and a meritorious cause of action." *Allianz Ins. Co. v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 789 (E.D. Va. 2000). The burden of establishing the existence of subject matter jurisdiction rests upon the party invoking the court's authority. *Allen*, 245 F. Supp. 2d. at 782.

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss allegations that fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

### III. Analysis

Plaintiff's first FTCA count alleges that Defendant committed medical malpractice by failing to diagnose and appropriately treat his Peyronie's Disease while he was a prisoner at FCC Petersburg. Liability under the FTCA is determined by state law. *See* 28 U.S.C. § 2674. The Virginia Medical Malpractice Act ("VMMA") provides the relevant standards in this case because the medical malpractice complained of occurred in Virginia. *See* 28 U.S.C. § 1346(b)(2); *Starns v.*

7

*United States*, 923 F.2d 34, 37 (4th Cir. 1991). Accordingly, the Court must consider whether Plaintiff has complied with the VMMA's certification requirement. *See Sowers v. United States*, 141 F. Supp. 3d 471, 476 (E.D. Va. 2015) (citing cases applying VMMA certification requirement to FTCA medical malpractice actions).

Under the VMMA, a plaintiff's filing of a medical malpractice complaint certifies that he has obtained a written opinion from an expert witness that "based upon a reasonable understanding of the facts, the defendant for whom service of process has been requested deviated from the applicable standard of care and the deviation was the proximate cause of the injuries claimed." Va. Code Ann. § 8.01-20.1. This certification, however, is not required if "the plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." *Id.* If the plaintiff files a complaint without complying with the expert certification requirement, the court "may dismiss the case with prejudice." *Id.*

In this case, it is uncontested that Plaintiff did not obtain the required expert opinion prior to requesting service

8

of process upon Defendant.[6] Defendant contends that the Court should grant summary judgment because of this deficiency. Plaintiff rebuts that an expert certification was not required because the negligence he alleges clearly lies within the range of the jury's common knowledge and experience. As described below, the Court concludes that expert certification was required prior to requesting service of process.

As an initial matter, the Court must clarify the nature of this motion. Defendant styles its motion as one for summary judgment, but requests that the Court dismiss the Complaint. The Court will treat the motion as a motion to dismiss because the analysis does not require the review of any extraneous documents and is concerned only with the sufficiency of the Complaint. *Cf. United Roasters Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1041, 1043 (E.D.N.C. 1979) ("[A] court may treat a motion for summary judgment as a motion to dismiss when it is concerned only with the sufficiency of the allegations within a count and not with factual material."). This standard of review is appropriate here because it is uncontested that Plaintiff did not timely obtain a certification and because the

---

[6] Over a year after filing suit, Baxter did obtain an opinion from Dr. Victor E. Henry that "based on a reasonable understanding of the facts, there was a deviation of care which may be the cause of present pain and discomfort." (*See* Letter [Dkt. 28-1] at 20.) At oral argument Plaintiff represented that he has obtained a letter to the same effect from a second doctor.

9

applicability of the common-knowledge exception depends on the plaintiff's good-faith allegations. *See* Va. Code Ann. § 8.01-20.1; *see also James v. United States*, No. 3:14-cv-827, 2016 WL 1060251, at *1 (E.D. Va. Mar. 10 2016) (addressing VMMA certification challenge through motion to dismiss); *Sowers*, 141 F. Supp. 3d 471 (same).

The Court turns now to Plaintiff's argument that an expert opinion was not required because his case falls into the exception for negligence that "clearly lies within the range of the jury's common knowledge and experience." This exception applies only in "rare instances." *Beverly Enters.-Va., Inc. v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994). Expert testimony is not required to show medical negligence, for example, when a doctor leaves a foreign object in a patient's body, *Easterling v. Walton*, 156 S.E.2d 787, 791 (Va. 1967), or when an at-risk patient falls or chokes after being left unattended, *Beverly*, 411 S.E.2d at 3-4; *Jefferson Hospital, Inc. v. Van Lear*, 41 S.E.2d. 441 (Va. 1947). Allegations that call into question a "quintessential professional medical judgment," by contrast, "can be resolved *only* by reference to expert opinion testimony." *Parker v. United States*, 475 F. Supp. 2d. 594, 597 (E.D. Va. 2007) (quoting *Callahan v. Cho*, 437 F. Supp. 2d. 557, 563 (E.D. Va. 2006)).

The above principles persuasively demonstrate that Baxter cannot avoid the certification requirement. Baxter alleges that the FCC Petersburg medical staff breached their standard of care by failing to initially diagnose his Peyronie's Disease, providing delayed and inadequate treatment after diagnosis, and deviating from the specialist's treatment recommendations. Breaches of the standard of care arising from failures to diagnose and treat illnesses fall squarely within the class of cases that require expert testimony. *See Parker*, 475 F. Supp. 2d at 597-98 (requiring expert in failure to diagnose and treat neurological impairment); *Bond v. United States*, No. 1:08-cv-324, 2008 WL 4774004 (E.D. Va. Oct. 27, 2008) (requiring expert when prison delayed for two months in treating a prisoner's diagnosed torn tendon). In addition to the general nature of Baxter's theory of liability, several complicating factors remove this case from the purview of the lay juror, including the relative obscurity of Peyronie's Disease, Baxter's suffering of another genital disease with symptoms overlapping those of Peyronie's Disease, the effect of the different medications Baxter received during his treatment, and the arrival of a new treatment with potentially severe side-effects. In light of those complicating factors, expert testimony would be required to determine whether the FCC

Petersburg medical staff breached the applicable standard of care for diagnosing and treating Peyronie's Disease.

Furthermore, expert testimony is required to demonstrate that any alleged breach proximately caused Baxter's injuries. *See Parker*, 475 F. Supp. 2d at 598 (interpreting VMMA to require expert certification of proximate cause). The relevant injury in a misdiagnosis and failure-to-treat case is "the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment," not the existence of the original disease. *St. George v. Pariser*, 484 S.E.2d 888, 891 (Va. 1997). Even if FCC Petersburg's delay and failure to treat were negligent, expert testimony is required to establish that those breaches proximately caused Baxter's condition to worsen, as described above. Speculation or conjecture will not suffice. *Parker*, 475 F. Supp. 2d at 598 (quoting *Fitzgerald v. Manning*, 679 F.2d 341, 349 (4th Cir. 1982)). A juror's common knowledge does not include the rate or cause of progression of Peyronie's Disease, especially when complicated with the factors discussed above. Thus, without expert testimony, a jury would need to resort to impermissible speculation to conclude that any of the negligence alleged proximately caused Baxter's condition to worsen.

In summary, Baxter's case does not fall into the exception for negligence that is clearly within the range of the

12

jury's common knowledge and experience.  Accordingly, Baxter was required to obtain an expert certification regarding Defendant's alleged breaches of the standard of care and proximate cause.  Because Plaintiff failed to timely obtain an expert opinion, the Court will dismiss Plaintiff's complaint without prejudice, and will permit leave to file an amended complaint.  This disposition is appropriate because Plaintiff's efforts to obtain an expert certification after requesting service of process indicate he can comply with the VMMA certification requirement.  *Cf.* Order, *Sowers v. United States*, No. 1:14-cv-177 (E.D. Va. Feb. 25, 2015), ECF No. 21 (granting leave to file an amended complaint after VMMA certification challenge).

      The Court will now turn to Counts II and III of the Complaint, which allege constitutional tort claims under the FTCA.  The FTCA waives the federal government's sovereign immunity "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *FDIC v. Meyer*, 510 U.S. 471, 477 (1994).  "In other words, a claimant has an FTCA cause of action against the government only if she would also have a cause of action under state law against a private person in like circumstances."  *Littlepaige v. United States*, 528 F. App'x 289, 292 (4th Cir. 2013) (quoting *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991)).  Because a

13

federal constitutional tort claim arises from federal law, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Meyer*, 510 U.S. at 457. Therefore, to the extent Plaintiff alleges constitutional tort claims, rather than state law claims, the Court must dismiss those claims for want of subject matter jurisdiction. *See Reinbold v. Evers*, 187 F.3d 348, 355 (4th Cir. 1999) ("Because the United States has not waived sovereign immunity in suits claiming constitutional torts, Reinbold's Fourth Amendment claim against the United States necessarily fails.").

As Defendant correctly argues, the above principles require the Court to dismiss Counts II and III of the Complaint. As an initial dispositive point, Plaintiff failed to respond in his brief or at the oral hearing to Defendant's argument that the Court lacks subject matter jurisdiction over Counts II and III. Accordingly, Plaintiff has waived those claims. *See Brand v. N.C. Dept. of Crime Control & Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (citing cases finding waiver through failure to respond). Even if Plaintiff's silence did not waive the counts, the Court would still dismiss Counts II and III for lack of subject matter jurisdiction.

Count II of the Complaint alleges that Defendants are liable for claims of "Medical Malpractice: Deliberate Indifference." (Compl. ¶¶ 55.) An earlier paragraph states

14

that "[t]he Eighth Amendment to the U.S. Constitution bars 'deliberate indifference to serious medical needs of prisoners.'" (Compl. ¶ 8.) When reading the Complaint as a whole, it is unavoidable that Plaintiff alleges an FTCA action for a violation of the Eighth Amendment of the U.S. Constitution. *Cf. Farmer v. Brennan*, 511 U.S. 825, 829 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). Plaintiff has not attempted to characterize Count II otherwise. Accordingly, the Court must dismiss this Count for lack of subject matter jurisdiction because the United States has not waived sovereign immunity from federal constitutional claims under the FTCA.

Similarly, Count III alleges a constitutional tort claim that must be dismissed for lack of subject matter jurisdiction. Count III alleges a violation of "Medical Malpractice: Equal Protection." (Compl. ¶¶ 56-57.) Although this Count does not expressly reference the U.S. Constitution, it is only reasonable to read the allegations as invoking the Equal Protection Clause of the Fourteenth Amendment or the coterminous implied equal protection guarantee under the Due Process Clause of the Fifth Amendment, which is applicable to

15

the federal government.[7]  *See Johnson v. O'Brien*, No. 7:09cv00504, 2010 WL 2927976, at *6 (W.D. Va. July 23, 2010) (citing *FCC v. Beach Commc'ns*, 508 U.S. 307, 312 (1993)).  In either case, Count III alleges a constitutional tort that is barred by sovereign immunity.  Accordingly, the Court must dismiss that Count for lack of subject matter jurisdiction.[8]

### IV.   Conclusion

For the foregoing reasons, the Court will dismiss Count I without prejudice, and will grant Plaintiff leave to file an amended complaint.  The Court will dismiss Counts II and III for lack of subject matter jurisdiction.

An appropriate order will issue.

|  |  |
|---|---|
| | /s/ |
| July 6, 2016 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

---

[7]   The Court construes pro se complaints liberally, but "liberal construction does not require us to attempt to discern the unexpressed intent of the plaintiff." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (internal quotation omitted).

[8]   Plaintiff does not attempt to assert a claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  "While *Bivens* actions allow for recovery of money damages against federal officials who violate the United States Constitution in their individual capacities, *Bivens* does not allow for recovery of money damages, or suits in general, against the government itself." *Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999).  Plaintiff does not assert any individual-capacity claims against federal officers.  Accordingly, the Court need not consider whether Plaintiff could sustain a *Bivens*-like claim.