IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JAMES O. BAXTER, II,                )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )       1:15cv633 (JCC/IDD)
                                    )
UNITED STATES OF AMERICA,           )
                                    )
        Defendant.                  )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on the Motion to
Dismiss [Dkt. 38] filed by Defendant United States of America.
For the reasons that follow, the Court will deny the Motion in
its entirety.

### I. Background

The following allegations of fact set forth in
Plaintiff's Complaint are taken as true for purposes of the
present Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009).

Plaintiff James O. Baxter, II, is a former inmate of
Federal Correctional Complex Petersburg ("FCC Petersburg").  *See*
Am. Comp. [Dkt. 37] ¶ 1.  His claims arise out of allegedly
inadequate medical care that he received during the period of
his incarceration.

In December of 2009, Plaintiff complained to FCC Petersburg's medical staff that he was experiencing discomfort in his genitals.  *See id*. ¶ 11.  He believed his symptoms to be consistent with Peyronie's Disease — a disorder characterized by an abnormal and painful curvature of the penis.  *See id.*; Pl.'s Exh. B [Dkt. 1-2] at 28.

Plaintiff repeatedly requested to see an urologist over the following months.  Am. Comp. [Dkt. 37] ¶ 12.  On March 15, 2010, a physician's assistant determined without examining Plaintiff that Plaintiff need not see a specialist.  *Id*. ¶ 13.  Plaintiff continued to complain of discomfort, and was finally permitted to see an urologist on September 11, 2011.  *Id*. ¶ 14.  The urologist confirmed that Plaintiff was, in fact, suffering from Peyronie's Disease.  *Id*.

The urologist recommended that Plaintiff begin taking vitamin E and return the following month.  *See id*.  Plaintiff, however, was not permitted to schedule a follow-up examination with the urologist.  Plaintiff learned eight months after his initial appointment that the urologist's contract with FCC Petersburg had been terminated.  *Id*. ¶ 15.  The prison medical staff refused to permit Plaintiff to see an outside specialist, requiring that he wait for FCC Petersburg to contract a new urologist.  *Id*. ¶ 16.

Eventually FCC Petersburg retained a new urologist and Plaintiff was permitted to see him.  The urologist found that Plaintiff continued to suffer from Peyronie's Disease and suggested that Plaintiff contact him if Plaintiff's symptoms worsened.  Am. Comp. Exh. A [Dkt. 37-1] at 3.

Plaintiff continued to request treatment, and was permitted to see an urologist again on June of 2012.  Am. Comp. [Dkt. 37] ¶¶ 17-19; Am. Comp. Exh. B [Dkt. 37-2] at 2.  During this visit, the urologist requested radiological imaging of Plaintiff's genitals.  Am. Comp. [Dkt. 37] ¶ 20.  Due to administrative delays and an error on the part of the testing facility, the imaging was not completed until April of 2013. *See id*. ¶¶ 20-26.

Around that same time, Plaintiff was informed that a new treatment for Peyronie's Disease would become available in November of 2013.  *Id*. ¶ 26.  Plaintiff submitted a request to undergo the new treatment to Dr. K. Laybourne, a member of FCC Petersburg's medical staff.  *See id*. ¶ 27.  Dr. Laybourne, however, did not submit Plaintiff's request to FCC Petersburg's administration until several months after the date by which Plaintiff had hoped to begin treatment.  *See id*. ¶¶ 28-33.  When Dr. Laybourne finally did submit the request, Plaintiff alleges that she mischaracterized the urologist's findings and as a result the request for treatment was denied.  *See id*. ¶¶ 34-35.

After August of 2013, Plaintiff was not permitted any further appointments with an urologist during the period of his incarceration. *Id.* ¶ 48. Plaintiff was, however, permitted examinations with non-specialist members of FCC Petersburg's medical staff. *See id.* ¶ 49. During one of these visits, Plaintiff learned that medication prescribed to him three years earlier for an unrelated condition had potentially contributed to his Peyronie's Disease. *Id.*

Six months after his release from custody, Plaintiff filed suit. Plaintiff alleged medical malpractice and constitutional torts based on FCC Petersburg's failure to adequately treat his Peyronie's Disease. He named Dana J. Boente, United States Attorney for the Eastern District of Virginia, and United States Attorney General Loretta E. Lynch as Defendants.

On July 6, 2016, on Defendant's motion, the Court issued a Memorandum Opinion [Dkt. 33] and Order [Dkt. 34] substituting the United States for the named defendants and dismissing Plaintiff's claims alleging constitutional torts. As to Plaintiff's medical malpractice claim, the Court found that Plaintiff had not complied with the Virginia Medical Malpractice Act, Va. Code § 8.01-20.1 ("VMMA"). The VMMA requires that medical malpractice plaintiffs

4

obtain[ ] from an expert witness whom the plaintiff
reasonably believes would qualify as an expert witness
pursuant to subsection A of § 8.01-581.20 a written
opinion signed by the expert witness that, based upon
a reasonable understanding of the facts, the defendant
for whom service of process has been requested
deviated from the applicable standard of care and the
deviation was a proximate cause of the injuries
claimed.

*Id.* Plaintiff conceded that he had not obtained an expert

opinion before filing suit. Accordingly, the Court dismissed

Plaintiff's medical malpractice claim while permitting Plaintiff

to comply with the VMMA's expert certification requirement and

file an amended complaint. *See* Mem. Op. [Dkt. 33] at 13.

Plaintiff filed his Amended Complaint [Dkt. 37] on July 25,

2016, re-alleging his claim for medical malpractice and adding a

claim for intentional infliction of emotional distress.

Defendant now moves to dismiss Plaintiff's Amended

Complaint for failure to attach the expert report that he

obtained between the dismissal of his previous Complaint and the

filing of his Amended Complaint.

## II. Legal Standard

"The purpose of a Rule 12(b)(6) motion is to test the

sufficiency of a complaint; importantly, [a Rule 12(b)(6)

motion] does not resolve contests surrounding the facts, the

merits of a claim, or the applicability of defenses." *Edwards v.*

*City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In

reviewing a motion to dismiss for failure to state a claim

brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). Generally, the Court may not look beyond the four corners of the complaint in evaluating a motion brought under Rule 12(b)(6). *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

In evaluating Defendant's Motion, the Court is mindful that Plaintiff is proceeding in this matter *pro se*. A "document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III. Analysis

Defendant argues that the Court should dismiss Plaintiff's medical malpractice claim because his Amended Complaint does not attach the expert opinion required by the VMMA. *See* Mem. in Supp. of Mot. to Dismiss [Dkt. 39] at 5-8. The Court has little difficulty rejecting this argument.

The VMMA does not require that a medical malpractice plaintiff submit an expert opinion with his or her complaint. The statute provides that the filing of a medical malpractice

claim "shall be deemed a certification that the plaintiff" has met the expert certification requirement.  Va. Code § 8.01-20.1. Accordingly, "[b]y [the VMMA's] plain terms . . . the complaint itself functions as a certification that a plaintiff has obtained the requisite expert opinion."  *Sowers v. United States*, 141 F. Supp. 3d 471, 477 (E.D. Va. 2015).

Indeed, rather than compelling disclosure, the VMMA states that no "defendant [shall] be entitled to" the expert opinion unless and until "the certifying expert [is] identified as an expert expected to testify at trial."  Va. Code § 8.01-20.1.  If a defendant demands proof that a plaintiff has in fact obtained an expert opinion, the plaintiff need provide only "assurance that he has obtained the expert opinion," not the opinion itself.  *Sowers*, 141 F. Supp. 3d at 478.  Defendant is therefore plainly not within its rights to demand that Plaintiff produce an expert opinion at this stage in the proceedings.

Defendant concedes in a footnote that "an expert certification is not ordinarily required to be provided with a complaint."  Mem. in Supp. of Mot. to Dismiss [Dkt. 39] at 7 n.2.  Defendant contends, however, that the Court's Order [Dkt. 34] on the prior Motion to Dismiss in this case "alter[ed] the timing of the statutory certification requirement" and modified "how such certification needed to be provided."  Mem. in Supp. of Mot. to Dismiss [Dkt. 39] at 7 n.2.

Defendant reads too much into the Court's Order.  The Court granted Plaintiff leave to "file an amended complaint including the expert certification required by Virginia Code § 8.01-20.1."  *See* Order [Dkt. 34].  While perhaps ambiguously worded, that Order did not purport to modify the timing or form of the expert certification required by the VMMA.  Rather, it simply permitted Plaintiff to file an amended complaint in compliance with the statute.  The Court certainly did not require Plaintiff to disclose his expert opinion before such time as "the certifying expert [is] identified as an expert expected to testify at trial."  Va. Code § 8.01-20.1.  Plaintiff therefore fully complied with both the VMMA and this Court's Order by obtaining an expert opinion and filing an amended complaint without appending it.

Regardless, the issue appears to be moot.  Plaintiff has submitted an expert opinion with his Opposition to the instant Motion.  *See* Opp. Exh. A [Dkt. 42-1].  He has therefore exceeded what the VMMA required of him.  In light of the above, the Court will deny Defendant's Motion to dismiss Plaintiff's medical malpractice claim.

Defendant also "politely suggests" in its Reply that the Court erred in permitting Plaintiff to file an amended complaint at all.  *See* Rep. [Dkt. 45] at 3.  Because the VMMA requires that a plaintiff obtain an expert opinion before

8

"service of process," and "services of process" is "a term of
art that references the *commencement* of a civil action,"
Defendant argues the Court was required to dismiss Plaintiff's
claims without leave to amend.   *Id*.

The Court declines to reconsider its earlier ruling.
The VMMA gives courts discretion when addressing a plaintiff's
failure to obtain the required expert certification. It provides
that "[i]f the plaintiff did not obtain a necessary certifying
expert opinion at the time the plaintiff requested service of
process on a defendant as required under this section, the court
*shall* impose sanctions according to the provisions of § 8.01-
271.1 and *may* dismiss the case with prejudice."  Va. Code §
8.01-20.1 (emphasis added).

Virginia Code section 8.01-271.1 requires only that
the Court impose "an appropriate sanction."  Here, the Court
found it appropriate, in light of Plaintiff's *pro se* status and
the interest of judicial economy, to dismiss Plaintiff's medical
malpractice claim without prejudice pending his substantial
compliance with the VMMA.  Defendant provides no compelling
reason to revisit that decision.

Turning to Defendant's arguments regarding Plaintiff's
claim for intentional infliction of emotional distress ("IIED"),
the Court notes that these arguments also take as their premise

that Plaintiff has failed to comply with the VMMA.  They therefore fail for the same reasons discussed above.

Defendant first contends that Plaintiff's IIED claim is barred by the VMMA because it is based upon allegations of medical malpractice.  *See* Mem. in Supp. of Mot. to Dismiss [Dkt. 39] at 8-9; *see also* Va. Code § 8.01-581.  But as Plaintiff has now complied with the requirements of the VMMA, that provides no reason to dismiss his claim.

Defendant argues further that because the VMMA bars Plaintiff's allegations of medical malpractice, the Court may only consider portions of Plaintiff's Amended Complaint that are "independent" of those allegations in evaluating Plaintiff's IIED claim.  *See* Mem. in Supp. of Mot. to Dismiss [Dkt. 39] at 9.  The only allegation Defendant deems sufficiently "independent" pertains to demeaning comments made by Dr. Laybourne.  *See id*.  Defendant therefore proceeds to argue at length that Dr. Laybourne's comments would not, standing alone, support a claim for intentional infliction of emotional distress.  *See id*. at 9-12.

But again, the Court is fully able to consider Plaintiff's allegations of medical malpractice.  Moreover, Defendant's argument is a straw man.  As Defendant concedes, Plaintiff "pled his intentional infliction of emotional distress claim . . . to encompass exclusively his allegations of medical

10

malpractice." Mem. in Supp. of Mot. to Dismiss [Dkt. 39] at 9.
Plaintiff plainly did not base his IIED claim on Dr. Laybourne's
comments. It is therefore irrelevant whether those comments
would support Plaintiff's claim. Accordingly, the Court finds
that Defendant provides no reason to dismiss Plaintiff's IIED
claim.[1]

Finally, in its Reply [Dkt. 45], Defendant raises
several additional arguments regarding Plaintiff's intentional
infliction of emotional distress claim. "'Typically, courts
will not consider an argument raised for the first time in a
reply brief.'" *Zinner v. Olenych*, 108 F. Supp. 3d 369, 398
(E.D. Va. 2015) (quoting *Touchcom, Inc. v. Bereskin & Parr*, 790
F.Supp.2d 435, 446 (E.D.Va.2011)).

That general rule applies with particular force in
this instance. "[T]he primary reason" that courts decline to
consider new arguments raised in a reply brief is to avoid
"prejudice[ing] [the opposing party] in its ability to respond
to the [new] argument." *Id*. Plaintiff is proceeding *pro se*,
and the Court permitted Defendant to file its Reply late.

---

[1]   Defendant also suggests — but only suggests — that
Plaintiff did not exhaust his administrative remedies with
respect to his claim for intentional infliction of emotional
distress. *See* Mem. in Supp. of Mot. to Dismiss [Dkt. 39] at 8.
Defendant, however, fails to elaborate on that suggestion.
Moreover, it appears that Plaintiff did in fact present his
claim of intentional infliction of emotional distress at the
administrative stage, and so exhausted his administrative
remedies. *See* Opp. [Dkt. 42] at 5-8.

Plaintiff was therefore less able to respond to Defendant's new arguments, and had less time to do so, than is typical.  The prejudice to Plaintiff is self-evident.  Accordingly, the Court declines to dismiss Plaintiff's IIED claim based on arguments raised in Defendant's Reply.

The Court notes, however, that intentional infliction of emotional distress is a highly disfavored tort under Virginia law.  *See, e.g.*, *Zaklit v. Glob. Linguist Sols., LLC*, 53 F. Supp. 3d 835, 847 (E.D. Va. 2014).  Success on such a claim is "rare[ ]," *id.*, and Plaintiff will face an uphill battle as the case proceeds.

### IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion in its entirety.

An appropriate order shall issue.


/s/

September 20, 2016                          James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE